# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

## PRO SE PRISONER CIVIL RIGHTS COMPLAINT

CASE NO. _____

**PLAINTIFF(S)** [Write the name(s) of the person(s) complaining]

Wilson Velez
_____

_____

_____

_____

_____

vs.

**DEFENDANT(S)** [Write the name(s) of the person(s) you are suing.   If you do not know a name, write "John Doe" or "Jane Doe."   Include the defendant's rank or title if you know it.]

Directory of Security A. Santiago
SRG Coordinator John Aldi
DR Investigator John Doe
DHO officer Jane Doe
District Administrator Edward Maldonado
All Defendants are being sued in their individual and official capacities.
Complete every section and **SIGN THE LAST PAGE.**

*Revised 4/13/18*

## A. JURISDICTION

Because federal courts cannot hear every kind of claim, you must identify the law that says this court can hear your claim.   There are two possibilities.   Check one.

I can bring my complaint in federal court because I am suing:

1. _____✓_____ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983/1985/1986; OR

2. _____ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF (THE PERSON FILING THIS COMPLAINT)

If there is more than one plaintiff, attach additional pages.   Provide items a, b, and c for each plaintiff.

1. First Plaintiff
   a. Full Name: Wilson Velez
   b. Inmate Number: 291940
   c. Correctional facility: MacDougall-Walker C.I.

2. Second Plaintiff
   a. Full Name:
   b. Inmate Number:
   c. Correctional facility:

## C. DEFENDANT (THE PERSON WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

If you are suing more than one person, attach additional pages.   Provide items a, b, and c for each defendant.

1. First Defendant
   a. Full Name: A. Santiago

*Revised 4/13/18*

2

    b.    Rank or Title: Director of Security

    c.    Workplace: 34 Wolcott Hill Rd, Wethersfield, CT 06109

2.  Second Defendant
    a.    Full Name: John Aldi

    b.    Rank or Title: SRG Coordinator

    c.    Workplace: 34 Wolcott Hill Rd, Wethersfield, CT 06109

3.  Third Defendant
    a.    Full Name: John Doe

    b.    Rank or Title: D.R. Investigator

    c.    Workplace: Hartford CC

4.  Fourth Defendant
    a.    Full Name: Jane Doe

    b.    Rank or Title: DHO

    c.    Workplace: Hartford CC

5.  Fifth Defendant
    a.    Full Name: Edward Maldonado

    b.    Rank or Title: District Administrator

    c.    Workplace: 944 Highland Ave, Cheshire, CT 06410

6.  Sixth Defendant
    a.    Full Name:

    b.    Rank or Title:

    c.    Workplace:

## D. REASON FOR COMPLAINT

**WARNING:**  Contact Inmate Legal Aid Program.  Common mistakes can get your
*Revised 4/13/18*

**case dismissed as frivolous or for failure to state a good legal claim.** If this happens, you will still have to pay the filing fee, even if you are proceeding in forma pauperis. To avoid losing your filing fee, please read this information carefully and consult Inmate Legal Aid Program before you file.

1. Failure to use the prison grievance process before suing. If you have not followed all the steps in the grievance process before you come to court, the defendants may ask the Court to dismiss your claims for "failure to exhaust administrative remedies."

2. Complaining about incidents that happened a long time ago: If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

3. Suing people who were not personally involved: You can generally only sue defendants who were directly involved in harming you. In order to sue a supervisor, you must usually show that the supervisor knew about the actions of other defendants and failed to stop them.

4. Suing defendants who have immunity to suit for money damages: You generally cannot sue the following people and entities for money damages: the State of Connecticut; agencies of the state (like the Department of Correction); the United States government; the President of the United States (for actions taken while President); judges (for actions taken in connection with judicial duties); parole board officers (for actions taken in imposing parole conditions or revoking parole); prosecutors (for actions taken in performing duties integral to the criminal judicial process). If you think you have a claim for money damages against such people or entities, check with Inmate Legal Aid Program first. If you name defendants who are immune to suit from money damages and your suit is dismissed on that basis, you will lose your filing fee.

5. Complaining about a criminal conviction or prison disciplinary proceeding that resulted in loss of good time credits or other change to your time in prison. If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding. See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Please note that this is not a complete list of the problems you might encounter with your case. The Court cannot give you legal advice and will not appoint a lawyer for you until it is clear that you have a good legal claim. Until then, your best strategy is to call the Inmate Legal Aid Program before you file a complaint. If Inmate Legal Aid Program says you do not have a good case, you should consider that advice very seriously.

Now you need to explain how your federal rights were violated (remember that not every
*Revised 4/13/18*

violation of state law or prison regulations amounts to a violation of federal law).   What you need to tell the Court is who did what, when they did it, and how you were harmed.

You do not need to cite to the Constitution, any statutes, or any cases.   However, it is important to be specific about dates, times, and the names of the people involved.   It is helpful to put each important fact in a separate, numbered paragraph.

If you do not know the name of the person who harmed you, call that person Defendant Doe and provide some information from which it will be possible to identify the person - for example, gender, rank and shift.   If there is more than one defendant whose name you do not know, call them Defendant Doe1, Defendant Doe2, and so on.

Here is an example of the proper way to describe your claims:

Example of Statement of Case
1. On April 12, 2015, I fell and injured my foot during a basketball game with other prisoners.
2. After the game, I asked Defendant CO Brian Smith to let me see the nurse.   Defendant CO Brian Smith told me that I could not see the nurse because it was not an emergency.
3. During the afternoon, my foot became swollen and very painful.
4. At about 5 p.m., in the presence of my cellmate Bill Bloggs, I told Defendant Lieutenant Jane Doe, who was the shift supervisor, that I needed a doctor and showed her my swollen foot.
5. Defendant Lieutenant Jane Doe brought me two Tylenol and told me that I could not see the nurse until sick call the next morning.
6. The next day, I could not get out of bed because my foot was so swollen and painful. I had to go to hospital and have an operation to fix my foot.
7. I had to take pain medication for two months after the operation and have needed a walking stick for support since that time.
Now describe your claims.

Statement of Case

1. On April 5, 2018 I arrived at Hartford CC as a new entry.

2. On May 7, 2018 I was brought to segregation and given a paper saying. "Pending SRG / Inmate conflict."

3. On May 10. 2018 DR Investigator John Doe came to my cell telling me to sign guilty on the paper, so he can hurry up and send me to the gang program.

Revised 4/13/18

5

4. I said, "no I'm not signing and where is my ticket?"

5. He said I don't get a ticket because its from law enforcement.

6. I then explained to the DR Investigator John Doe that I renounced my membership with the Latin Kings.

7. Due to me being shot in 2015. In 2017 I was no longer a part of the Latin kings because I was a snitch. I was terminated. I cooperated in a police investigation.

8. DR Investigator John Doe did not care. He stated, "I'm wasting my time because no matter what I will be found guilty because of the report from law enforcement.

9. I told him my criminal case isn't organized crime. I'm not on parole or probation. Its 2018 where is the report? I would like to see it because its not true.

10. DR Investigator John Doe ignored my request and left from in front of my cell upset.

If you need more space, attach additional pages, but be as brief as possible.

## E.   REQUEST FOR RELIEF

Tell the court what kind of relief you want.  **Remember**: (1) You can only get money damages for mental or emotional injury if you were also physically injured; (2) Money damages may be reduced to pay restitution to victims of your crime and fees for a court-appointed attorney, if you had one; (3) You cannot use a Section 1983 or *Bivens* action to request release from custody, a reduction in your sentence, or a restoration of good time credits.   For any of these, you must request a Writ of Habeas Corpus.

*Revised 4/13/18*

6

**F.**   **DO YOU WISH TO HAVE A JURY TRIAL?   YES** ✓ **NO**_____

**G.**   **DECLARATION UNDER PENALTY OF PERJURY**

Warning: You must sign this or your complaint will not be filed.

By signing this complaint, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge.   I understand that if I lie in this complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.   See 18 U.S.C. Sections 1621, 3571.

Signature: X _wilson Velez_____

Signed at ___MWCI_____ on X _9-17-18___
                      (Location)                              (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it.   **The complaint cannot be filed without a signature from each plaintiff.**

**H.**   **FINAL INSTRUCTIONS**

WARNING: Your complaint will not be filed unless you complete each of these steps:

1.   Answer all questions on the complaint form.

2.   Sign the Declaration under Penalty of Perjury on p. 7

Remember, the Clerk cannot file your complaint unless you take all of the steps above.

*Revised 4/13/18*



# Inmate Administrative Remedy Procedure –
## Notice of Time Extension
### Connecticut Department of Correction

CN 9605
REV 1/31/09

| | |
|---|---|
| Inmate name: *VELEZ, WILSON* | Inmate number: *291940* |
| Facility/Unit: *HCC* | Housing unit: *B-66* | Date: *7/27/18* |

Your grievance/appeal is currently pending at:

It appears that the time needed to investigate and respond to you will exceed the timeframe established by Administrative Directive 9.6, Inmate Administrative Remedies. I am, therefore, notifying you that the time frames have been extended at this level so that the issue can receive full consideration.

Additional comments: *YOUR SRG APPEAL # 010089 HAS BEEN EXTENDED 15 BUSINESS DAYS FROM 7/31/18 TO 8/20/18 FOR FURTHER INVESTIGATION*

| | |
|---|---|
| Administrative Remedies Coordinator: *U Schaffer* | Date: *7/27/18* |



# Inmate Administrative Remedy Procedure –
## Notice of Time Extension
**Connecticut Department of Correction**

CN 9605
REV 1/31/09

| Inmate name: | VELEZ,WILSON | | Inmate number: | 291940 |
|---|---|---|---|---|

| Facility/Unit: | HCC | Housing Unit: | B-66 | Date: | 7/10/2018 |
|---|---|---|---|---|---|

Your grievance/appeal is currently pending at:  MWCI

It appears that the time needed to investigate and respond to you will exceed the timeframe established by Administrative Directive 9.6, Inmate Administrative Remedies.  I am, therefore, notifying you that the time frames have been extended at this level so that the issue can receive full consideration.

Additional comments:   Your SRG appeal #010089 has been extended 15 business days from 7/11/2018 to 7/31/2018 for further investigation.

| Administrative Remedies Coordinator: | | Date: | 7/10/18 |
|---|---|---|---|



# STATE OF CONNECTICUT
## *DEPARTMENT OF CORRECTION*
### 24 WOLCOTT HILL ROAD
### WETHERSFIELD, CONNECTICUT  06109

July 7, 2018

Inmate Wilson Velez
#291940
MacDougall/Walker CI
1153 East Street South
Suffield, CT 06080

Inmate Velez:

This letter is to notify you that this office received your request dated June 10, 2018, referencing your Security Risk Group Member Latin King affiliation.

Your file and other pertinent information have been reviewed.  The information that was provided by outside law enforcement was sufficient enough to bring you to the hearing where you were redesignated as a Latin King member.  Your designation will remain at this time.

If you feel that you have any safety concerns, it is recommended that you bring them to the attention of facility staff immediately.

At this time I recommend that you remain discipline free and refrain from any further security risk group activity.

John Aldi
Security Risk Group Coordinator

jla

cc:    Warden W. Mulligan
       Intelligence Coordinator
       Inmate Master File
       Intelligence File

*An Equal Opportunity Employer*



# STATE OF CONNECTICUT
## *DEPARTMENT OF CORRECTION*
### 24 WOLCOTT HILL ROAD
### WETHERSFIELD, CONNECTICUT 06109

July 6, 2018

Inmate Wilson Velez
#291940
MacDougall/Walker CI
1153 East Street South
Suffield, CT 06080

Inmate Velez:

This letter is to notify you that this office received your request dated June 14, 2018, referencing your Security Risk Group Member Latin King affiliation.

Your file and other pertinent information have been reviewed again. As stated in my last response, you were not given a disciplinary report and were brought directly to a hearing to be designated as an active member of the Latin Kings. The information provided by outside law enforcement was sufficient information to show your continued involvement as a Security Risk Group Member. Administrative Directive 6.14, Security Risk Groups is what governs your status.

This matter is considered closed.

At this time I recommend that you remain discipline free and refrain from any further security risk group activity.

A. Santiago
Director of Security

jla

cc:   Warden W. Mulligan
      Intelligence Coordinator
      Inmate Master File
      Intelligence File

*An Equal Opportunity Employer*



# STATE OF CONNECTICUT
## DEPARTMENT OF CORRECTION
### 24 WOLCOTT HILL ROAD
### WETHERSFIELD, CONNECTICUT 06109

June 15, 2018

Inmate Wilson Velez
#291940
MacDougall/Walker CI
1153 East Street South
Suffield, CT 06080

Inmate Velez:

This letter is to notify you that this office received your request dated June 4, 2018, referencing your Security Risk Group Member Latin King affiliation.

Your file and other pertinent information have been reviewed. You were not given a disciplinary report and you do not have any disciplinary sanctions. You were brought directly to a hearing to be designated as an active member of the Latin Kings and received all of your due process. The group you were placed in, while it is referred to as a "ticket group", it is referencing inmates that are waiting for the initial 90 days to clear or for those that have disciplinary reports waiting to be cleared prior to starting programming. You need to wait 90 days in Phase 2 and then complete Phase 2 programming which takes 2 months. After that initial 5 months, you will be eligible to progress to Phase 3.

At this time I recommend that you remain discipline free and refrain from any further security risk group activity.

A. Santiago
Director of Security

jla

cc:     Warden W. Mulligan
        Intelligence Coordinator
        Inmate Master File
        Intelligence File

*An Equal Opportunity Employer*



# STATE OF CONNECTICUT
## DEPARTMENT OF CORRECTION
### District II Office
#### 944 Highland Ave
##### CHESHIRE, CONNECTICUT 06410

*Edward Maldonado*
*District Administrator*

*September 5, 2018*

*Mr. Wilson Velez #291940*
*Hartford Correctional Center*
*177 Weston Street*
*Hartford, CT 06120*

*Dear Mr. Velez:*

*This letter acknowledges receipt of your SRG appeal on August 23, 2018 regarding the appeal of a long form Security Risk Group affiliation to the "Latin Kings" indicated in Report# HCC-2018-05-039*

*This long form Security Risk Group appeal is not retried at the district level, but rather the facts of the case are evaluated. A review of the appeal documents indicate the Disciplinary Hearing Officers finding is reasonable and supported by staff documentation provided by an outside Law Enforcement Agency identifying you as an active Latin King member. With no significant errors found with the due process, I am upholding your designation as a Latin King member in accordance with Administrative Directive 6.14 Security Risk Groups and your designation will remain.*

*In addition your SRG appeal was received by the Hartford ARC Coordinator on June 4, 2018 and routed incorrectly, however upon receipt of your SRG appeal is was answered by my office in accordance with A.D. 9.6 Inmate Administrative Remedies. Please note that this District Level decision is not subject to further appeal.*

*Sincerely,*

*Edward Maldonado*
*District Administrator*

*EM/db*

*C:      Warden Black*
*         File*

**ARREST WARRANT APPLICATION**
JD-CR-64a Rev. 3-11
C.G.S. § 54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

| Name (Last, First, Middle Initial) | | Residence (Town) of accused | Court to be held at (Town) | Geographical |
|---|---|---|---|---|
| Rivera, Miguel | AKA MACHO | Hartford | Hartford | Area number  14 |

## Affidavit - Continued

it was fucked up because he has an autistic son.

- Witness #2 stated "Santana" did not respond to the man, and that Rivera and "Santana" walked out of the restaurant. The man that was confronting "Santana" followed them. He observed the man punch "Santana" in the face once they were outside.
- Witness #2 observed Santana point a gun at the guy that punched him. "Santana" shot the man 5 or 6 times and he fell to the ground. "Santana" then walked over, stood over the man, and tried to shoot him again but nothing happened.
- Witness 2 and his wife fled the area and were contacted by Miguel Rivera later that night. Rivera told him to tell the police that Witness #2 was the one that knew "Santana" because that is what he had already told the police.

16. Witness #2 agreed to look at photographs in attempt to identify the suspect. Detective O'Gorman who is not familiar with this investigation provided Witness #2 with a Hartford Police Witness Instruction for Photo Identification Form. Witness #2 reviewed this form, initialed, and signed it indicating he fully understood the instructions.

17. Detective O'Gorman presented 8 individual and separate photographs to Witness #2. Witness #2 reviewed all the photographs and identified the male in photograph #5 as the person named "Santana that shot the victim. Witness #2 signed photograph #5 memorializing his selection and stated he was one hundred percent positive of his identification. The male in photograph five was further identified as Ronald Coleman DOB 05/04/1993, HPD Masterfile number A139476.

18. The Affiants confirmed that Coleman was not incarcerated at the time of this incident and all attempts to locate and interview him have been unsuccessful. The Affiants also constructed and disseminated an informational flier to the sworn members of the Hartford Police Department also requesting assistance with negative results.   Coleman is currently on probation and did not report to a required probation visit scheduled on March 03, 2015 at the Hartford Probation Office. It should also be noted that Coleman is a convicted felon as of July 16, 2014 under docket number H14H-CR14-0673895-S and can no longer lawfully possess a firearm in the state of Connecticut.

19. In summation (the victim of this shooting provided accurate and specific information related to the identity and address of his assailant.) Witnesses at the scene, who were in very close proximity to the suspect, provided sworn written statements consistent with the information provided by the victim and positively identified the shooter as Ronald Coleman DOB 05/04/1993. These witnesses also confirmed that Miguel Rivera DOB 09/13/1991 was not truthful in the information he provided the Affiants and made an effort to conceal the true identity of the primary suspect who he knows personally.

20. Based on the above facts and circumstances, the Affiants respectfully request the court issue an arrest warrant for Miguel Rivera DOB 09/13/1991. That Rivera is charged with the following violations of CT General Statutes:
Hindering Prosecution Second Degree 53a-166
Tampering with a Witness 53a-151 (two counts)

(This is page 4 of a 4 page Affidavit).

| Date | | Signed (Affiant) | |
|---|---|---|---|
| | 3/4/15 | | |
| **Jurat** | Subscribed and sworn to before me on (Date) 3/4/15 | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public) | |
| Reviewed (Prosecutorial Official) | | Date 4/MAR/15 | Reviewed (Judge/Judge Trial Referee) | Date 3/4/15 |

ARREST WARRANT APPLICATION
JD-CR-64a Rev. 3-11
C.G.S. § 54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.ct.gov

| Name (Last, First, Middle Initial) | | Residence (Town) of accused | Court to be held at (Town) | Geographical |
|---|---|---|---|---|
| Rivera, Miguel | AKA MACHO | Hartford | Hartford | Area number 14 |

## Affidavit - Continued

Witness #1 provided the Affiants the following information in a sworn written statement that was sworn to under oath:

- She and her husband (Witness #2) and Miguel Rivera AKA MACHO were eating lunch at Aqui Me Quedo II. While at the location, Rivera called a friend of his and told him to meet them at the restaurant.
- Rivera's friend arrived a short time later and Rivera introduced him as his brother, "Santana".
- A few minutes after "Santana" arrived another person she does not know entered the restaurant and approached "Santana"
- This individual asked "Santana" "Why me?" He was calm and asked her (Witness #1) if she knew what "Santana" had done to him. He then explained that "Santana" had done a home invasion at his house a year ago and that he was lucky his pregnant wife and autistic son were not home at the time.
- Witness #1 stated she became uncomfortable and asked her husband to leave. She heard Miguel Rivera say to "Santana" "come on brother lets go"
- As they left the restaurant she observed Rivera, "Santana", and the guy that approached their table standing across the street. The guy that accused "Santana" punched "Santana" in the face
- Witness #1 observed "Santana" pull out a small firearm and shoot the guy who punched him several times. After the guy fell, she observed "Santana" approach him, point the gun at his head and try to shoot him again. She believed he was out of bullets because the gun did not fire
- Witness #1 and another husband left the scene and drove back home. They were contacted by Rivera hours later. Rivera told them he was questioned by the police and said "Santana" was friends with Witness #2 and it was Rivera who set the meeting. The suspect. Witness #2 became angry and Rivera told him to just stick to the story he provided to Police.

13. Witness #1 stated she would be able to identify "Santana" and agreed to look at photo arrays. She was advised that an Officer with no knowledge of the suspect's identity would have to administer the array and was introduced to Officer Borkowski. The Affiants then left the room and Officer Borkowski provided Witness #1 with the Hartford Police Witness Instruction for Photo Identification Form. Witness #1 reviewed this form, initialed, and signed it indicating she fully understood the instructions.

14. Officer Borkowski presented 8 individual and separate photographs to Witness #1. Witness #1 reviewed all the photographs and identified the male in photograph #5 as the person she saw shoot the victim. Witness #1 signed photograph #5 memorializing her selection and stated she was one hundred percent positive of her identification. The male in photograph five was further identified as Ronald Coleman DOB 05/04/1993, HPD Masterfile number A139476.

15. Witness 2 provided MCD Detectives Richter and Placzek the following information in a written statement that was sworn to under oath:

- Witness #2, Witness #1 and Miguel Rivera AKA MACHO were eating lunch at Aqui Me Quedo II on Albany Avenue.
- Once they sat down to eat a guy he knows as "Santana" walked in and joined them. Rivera formally introduced this male to him as "Santana"
- While they were sitting and talking a light skinned Puerto Rican guy approached "Santana" and started asking him "Why did you do me like that? Why did you do that?"
- The guy turned to the rest of the table and asked if they knew what "Santana" did to him. He then explained that "Santana" did a home invasion and that he was lucky his wife who was pregnant was not home. He also said

(This is page 3 of a 4 page Affidavit.)

| Date | | Signed (Affiant) |
|---|---|---|
| | 3/1/15 | Det. A. Rodbust — Det. |
| Jurat | Subscribed and sworn to before me on (Date) 3/4/15 | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public) |
| Reviewed (Prosecutorial Official) | Date 7 MAR 15 | Reviewed (Judge/Judge Trial Referee) | Date 3/4/15 |

ARREST WARRANT APPLICATION
JD-CR-64a Rev. 3-11
C.G.S. § 54-2a
Pr. Bk. Sec. 36-1, 36-2, 35-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.ct.gov

| Name (Last, First, Middle Initial) | | Residence (Town) of accused | Court to be held at (Town) | Geographical |
|---|---|---|---|---|
| Rivera, Miguel | AKA MACHO | Hartford | Hartford | Area number  14 |

## Affidavit - Continued

brother in law introduced this person as "Santana"

- While they were sitting down eating, another person who he did not know came in and began to accuse "Santana" of a robbery
- The group left shortly thereafter and as they walked across the street, "Santana" was punched by the person that came in and accused him of the robbery
- He then observed "Santana" produce a firearm and shoot the person that punched him

7.  It was noted that Rivera was not completely forthcoming during the interview and clearly attempting to withhold information related to the identity of "Santana". Rivera provided a physical description of "Santana" as approximately 20-25 years old, 5'-5" tall with blondish hair, a big beard, and possibly from the Madison Street area.

8.  The people Rivera referred to as his brother in law and his wife were positively identified. For fear of retaliation and for the general safety of the witnesses, they will be referred to as Witness #1, Witness #2, Witness #3, and so on throughout this affidavit. The true identity of the witnesses is known to the Affiants and maintained within the case file.

9.  On Tuesday March 03, 2015 at approximately 0945 hours, the Affiants made contact with Velez in the Intensive Care Unit at Saint Francis Hospital. At this time Velez expressed his reluctance to provide a formal written statement but verbally provided the following information:  He  told .

- He stopped by the Aqui Me Quedo II restaurant for lunch and noticed a guy who had previously broken into his home standing outside the restaurant. Velez sated this person's nickname was "BEBE" and explained he is the nephew of one of his friends
- Velez's home had been burglarized sometime around July 2013 and he had been told that BEBE was responsible. Velez stated he wanted to ask "BEBE" about the incident because he wanted closure and wanted to know why he would do that to him. Velez commented that he was lucky his pregnant wife and autistic son were not home at the time
- He approached BEBE who was seated inside the restaurant and questioned him about the incident. BEBE told him that he was "strapped". "Strapped" is common street terminology meaning a person is in possession of a firearm
- BEBE and the people he was with left the restaurant shortly thereafter and once outside he punched BEBE one time. BEBE then shot him several times
- After he was initially shot and fell to the ground, BEBE stood over him and tried to shoot him again however he was out of bullets

10.  Velez stated BEBE's real name was Ronald and he believes BEBE lived at 806 Mary Shepard Place in Hartford with his grandmother whose last name was Rivera. Velez described Ronald as approximately 20-22 years old, 5'-5" tall, thin build, medium complexion, with short curly hair. Velez stated numerous times that he was concerned his friends may retaliate against the person who shot him and that he was providing this information in an attempt to prevent such acts.

11.  Based on the information provided by Velez, BEBE was subsequently identified as Ronald Coleman DOB 05/04/1993 of 806 Mary Shepard Place, Hartford. Coleman matched the physical description provided by Perez and witnesses. Photo arrays where created that contained Coleman's mugshot to present to the witnesses.

12.  On Tuesday March 03, 2015, at approximately 1100 hours, the Affiants made contact with Witness # 1 at the MCD.

(This page is page 2 of a 4 page Affidavit.)

| Date | | | Signed (Affiant) | |
|---|---|---|---|---|
| | 3/4/15 | | Det. A. Pirkasci | |
| Jural | Subscribed and sworn to before me on (Date) 3/4/15 | | Signed (Judge/Clerk, Commissioner of Superior Court, Notary Public)  D28 | |
| Reviewed (Prosecutorial Official) | | Date 4MAR15 | Reviewed (Judge/Judge Trial Referee) | Date 3/4/15 |

ARREST WARRANT APPLICATION   ~~COPY~~   STATE OF CONNECTICUT
JD-CR-64b   Rev. 3-11                                SUPERIOR COURT
C.G.S. § 54-2a                                        www.jud.ct.gov
Pr. Bk. Sec. 36-1, 36-2, 36-3

| For Court Use Only |
| Supporting Affidavits sealed |
| ☐ Yes   ☐ No |

| Police Case number | Agency name | | | Agency number |
| 15-6354 | Hartford Police Department | | | 064 |

| Name (Last, First, Middle Initial) | | Residence (Town) of accused | Court to be held at (Town) | Geographical |
| Rivera, Miguel | AKA MACHO | Hartford | Hartford | Area number 14 |

## Application For Arrest Warrant

To: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts
set forth in the: ☒ Affidavit Below.   ☐ Affidavit(s) Attached.

| Date | Signed (Prosecuting authority) | Type/print name of prosecuting authority |
| 4 MAR 15 | | Maipre |

## Affidavit

The undersigned affiant, being duly sworn, deposes and says:

1. The Affiants, Detective A. Rykowski and L. Poma are sworn members of the Hartford Police Department (HPD) and have
29 years of combined police experience. The Affiants are currently assigned to the Major Crimes Division (MCD) and
tasked to investigate: serious assaults, untimely deaths, robberies, and homicides.

2. On Monday March 02, 2015, at approximately 1214 hours, Hartford Police Dispatch received numerous calls reporting
a person shot in the area of Albany Avenue and Chestnut Street. Responding officers located Wilson Perez DOB
02/09/1985 AKA WISO, suffering from numerous gunshot wounds to his chest and back. Velez was transported to Saint
Francis Hospital by American Medical Response unit #934. Velez was listed in critical condition and rushed to the
operating room for emergency surgery.

3. The Affiants were notified of this incident and responded to the location where the following information was
obtained:

4. The Affiants observed several small caliber shell casings along the south curb of Albany Avenue at the intersection of
Chestnut Street and what appeared to be the victim's clothing and discarded medical supplies approximately 30 feet west.
The Affiants then entered the Aqui Me Quedo II restaurant and observed a table near the front door that had been
secured by patrol officers. At this time it was learned that this is the location in which the suspect(s) had been seated and
eating prior to the shooting.

5. While at the crime scene the Affiants were informed that members of the Hartford Police Shooting Task Force had
detained an individual seen running from the scene. This individual, identified as Miguel Rivera DOB 09/13/1991 AKA
MACHO, was transported to the Major Crimes Division for debriefing.

6. The Affiants returned to the Major Crimes Division to begin a debrief interview with Rivera which was audio and video
recorded. Rivera was provided with a Hartford Police Waiver of Rights Form which he read, initialed, and signed. In the
post Miranda interview Rivera provided the following information:
   • He had been eating inside the Aqui Me Quedo restaurant with his brother in law and his brother in law's wife
   • A friend of his brother in law that he had never met came to the restaurant later on and joined them. That his

(This is page 1 of a 4 page Affidavit.)

| Date | 3/4/15 | Signed (Affiant) |
| Jurat | Subscribed and sworn to before me on (Date) 3/4/15 | Signed (Judge/Clerk/Commissioner of Superior Court, Notary Public) D28 |

## Finding

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and
considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that
an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the
issuance of a warrant for the arrest of the above-named accused.

| Date and Signature | Signed at (City or town) 3/4/15 Hartford | On (Date) 3/4/15 | Signed (Judge/Judge Trial Referee) | Name of Judge/Judge Trial Referee JDDewey |

## Statement of case continued

11. On May 14, 2018 I went to a D.R. hearing without a ticket nor a report from law enforcement to challenge it.

12. As soon as I tried to explain myself to the Hearing officer Jane Doe, she rudely interrupted me and stated, "nothing you say matters because you are guilty because its from outside law enforcement."

13. I then asked for a continuance, so I can have my lawyer present to explain that I am not a Latin King member.

14. She said, "no and told me I have to find you guilty."

15. On 5-21-18 I was transferred to Walker C.I. Phase 2.

16. While housed at Walker C.I. I was put in a "ticket group" and I did not have a ticket.

17. About a week after I arrived at Walker C.I. Phase 2 SRG coordinator John Aldi toured B2 unit.

18. I stopped him and I told him that he knows I am not a Latin King anymore.

19. He responded stating he knows I am not by choice, but if I wanted

1.

Statement of case continued

to be I can because I am a very influential person. But because of law enforcement I am guilty.

20. I then tell him thats not fair.

21. John Aldi responded by saying, "take me to court I don't care. its not my money."

22. Disappointed by his response I filed A SRG Appeal receipt dated 6-4-18.

23. I Also wrote requests pleading my case again to John Aldi and Director of Security A. Santiago.

24. I received their responses dated June 15, July 6 and July 7 stating their decision is final.

25. On July 10, 2018 I received my first extension of time for my SRG Appeal And A second extension dated 7-27-18.

26. I did not receive A fair trial. Director A. Santiago predetermined my SRG Appeal and it was still pending.

27. On Sept 5, 2018 Edward Maldonado stated that there weren't no significant errors found with the due process". And that his decision is not subject to

2.

Statement of Case continued

further Appeal.

28. Prior to being placed in Administrative segregation I did not get reviewed by the SRG Review Committee.

29. There wasn't a notice or A hearing to object nor offer my views or explanation to me being placed in the SRG program Phase 2.

30. There was no paper given to me two business days prior to A hearing.

31. The defendants in this case just sent me to this SRG program triggering my due process. So that they can defraud the Feds for more money.

32. Upon entering Administrative segregation I have been going through mental and emotional distress.

33. I have A pending criminal case. I cannot effectively fight my criminal case while being housed in this type of setting which poses an "Atypical and significant hardship in relation to ordinary incidents of prison life."

34. I am a pretrial detainee housed in a setting with convicted prisoners.

35. I only receive 3 visits a week from my wife and kids who are Autistic. It is a struggle for my family to schedule visits due to prison officials not

3.

Statement of case continued

answering the phone. My wife constantly cries when she cannot see me. In general population I'm Alloted more visits and 6 calls A day As opposed to 3 phone calls A week in the SRG program.

36. In general population visitors can show up at the prison during visiting hours and there is no problem.

4.

# LEGAL CLAIMS

## Count 1

Defendant D.R. Investigator John Doe violated my 14th and 5th Amendments to the Federal Constitution. and Sec. 8 and 9 of the Connecticut Constitution Article First. Defendant John Doe subjected me to segregation without no ticket. In Addition, he did not render report from law enforcement so that I can review it and defend myself prior to the hearing when I asked him for it.

## Count 2

Defendant DHO Jane Doe violated my 14th and 5th Amendments to the U.S. Constitution, and Sec. 8 and 9 of the Connecticut Constitution Article First. Defendant Jane Doe rudely interrupted me at the hearing and refusing to hear my side of the story. She cut me off and stated no matter what I say matters because I am guilty. Moreover, she refused to give me a continuance, so that my lawyer can be present and explain that I am not a gang member. Nonetheless, I was brung to a hearing without a ticket or a chance to review the report from law enforcement, so that I can properly defend myself. Defendant Jane Doe was arbitrary and capricious.

## Count 3

Defendants D.R. Investigator John Doe and DHO Jane Doe violated

## LEGAL CLAIMS continued

my 14th and 5th Amendments to The U.S. Constitution and Sec. 8 and 9 of the Connecticut Constitution Article First. Defendants placed me in the ticket group with no ticket. Defendants did not perform an SRG Review Committee in Accordance with A.D. 6.14. Moreover, they did not give me a written notice or a hearing prior to being placed in Administrative Seg nor a chance to object and explain my views. They shipped me from Hartford CC straight to Walker C.I. Phase 2 ~~without~~ triggering my due process. Defendants failed to follow their own rules set forth in A.D. 9.4 Number 12 - Administrative Segregation Status.

## Count 4

Defendants Santiago, Aldi, and Maldonado violated my 14th and 5th Amendments to the U.S. Constitution and Sec. 8 and 9 to the Connecticut Article First. Defendants predetermined my SRG placement when there was an extension twice. Defendants violated my rights by failing to correct the misconduct and encouraging the continuation of the misconduct of all defendants in this suit. Defendants were arbitrary and capricious and that in turn violated my due process. Defendant Maldonado violated my rights by stating, "no significant errors found with the due process." Defendant Maldonado is admitting that there were errors but they weren't significant.

# Prayer For Relief

Wherefore, plaintiff respectfully prays that this court enter judgement:

1. Granting Plaintiff Velez a declaration that the Acts and omissions described herein violate his rights under the Constitution and laws of the United States, and

2. A preliminary and permanent injunction ordering defendant John Aldi, to ceise contact with plaintiff Velez.

3. Granting Plaintiff Velez compensantory damages in the Amount of $ 50, 000.

4. Granting plaintiff Velez punitive damages in the Amount of $ 50,000.

5. Granting plaintiff Velez to go back to general population and throw his SRG placement out.

6. Plaintiff Also seeks recovery of his cost in this suit, and

7. Any additional relief this court deems just, proper, and equitable.